UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONYA DANIELLE JOHNSON, | |
| Plaintiff, | CIVIL ACTION NO. 3:21-cv-02077 |
| v. | (SAPORITO, M.J.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

# MEMORANDUM

In this matter, the plaintiff, Tonya Danielle Johnson, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. BACKGROUND

On September 26, 2019, Johnson protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of February 15, 2019. Her claims were

initially denied by state agency reviewers on January 27, 2020, and upon reconsideration on July 28, 2020. The plaintiff then requested an administrative hearing.

A hearing was held on March 18, 2021, before an administrative law judge, L. Harris (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Mary Cornelius. The plaintiff was represented by counsel at the hearing.

On May 20, 2021, the ALJ denied Johnson's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Johnson was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Johnson had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Johnson had the severe impairments of: obesity; depressive disorder; anxiety disorder; obsessive-compulsive disorder; schizophrenia; and asthma.

At step three, the ALJ found that Johnson did not have an impairment or combination of impairments that meets or medically

equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Johnson's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in two functional areas— (1) interacting with others, and (2) concentrating, persisting, or maintaining pace—and mild limitations in the other two—(3) understanding, remembering, or applying information, and (4) adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.03 and 12.04,[1] the ALJ also considered whether Johnson's mental disorders were "serious and persistent," finding that

---

[1] Listing 12.03 concerns schizophrenia spectrum and other psychotic disorders, and listing 12.04 concerns depressive, bipolar and related disorders. For reasons that are not clear, the ALJ did not expressly consider these paragraph C criteria in connection with listing 12.06, which concerns anxiety and obsessive-compulsive disorders, despite finding at step two that Johnson's severe impairments included anxiety disorder and obsessive-compulsive disorder. The Commissioner or her designate is encouraged to address this discrepancy on remand.

her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Johnson's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Johnson had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[2] with the following limitations:

> [The claimant] can never climb ladder[s], ropes, or scaffolds. She should avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases, and poor ventilation. She should avoid all exposure to hazards such as machinery, heights, etc. Mentally she can understand, remember, and carry out short and simple instructions. She can interact[] appropriately with the

---

[2] The Social Security regulations define "medium work" as a job that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *id.* § 416.967(c).

> general[ ]public, supervisors, co-workers, or peers frequently during an 8-hour workday. She can respond appropriately to changes in the work setting frequently during an 8-hour workday. She can maintain attention and concentration to stay on tasks for 2-hour periods over the course of an 8-hour workday. Time off tasks during the workday can be accommodated by normal breaks. She is able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variable[s] in or from standardized situations.

(Tr. 17.)

In making these factual findings regarding Johnson's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he or she found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, the ALJ concluded that Johnson had no past relevant work.

At step five, the ALJ concluded that Johnson was capable of performing work that exists in significant numbers in the national

economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Johnson was capable of performing the requirements of representative occupations such as hand packager (DOT # 920.587-018), bacon skin lifter (DOT # 521.687-126), light fixture assembler (DOT # 723.684-018), paper inserter (DOT # 920.687-138), mail sorter (DOT # 209.687-026), document preparer (DOT # 249.587-018), brokerage telephone quotation clerk (DOT #237.367-046), or lens inserter (DOT # 713.687-026). Based on this finding, the ALJ concluded that Johnson was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on October 13, 2021, making the ALJ's May 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on December 13, 2001. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Johnson asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ lacked substantial evidence to reject the plaintiff's IQ score of 67 and related diagnosis of mild intellectual disability, failed to consider whether that mild intellectual disability constituted a severe impairment, and failed to properly consider the limitations imposed by this impairment in determining the plaintiff's RFC; and (2) the ALJ erred in finding that the plaintiff's migraine impairment was nonsevere, and in failing to properly consider the limitations imposed by this impairment in determining the plaintiff's RFC.

Finding the first issue dispositive of this appeal and remanding the case to the agency to properly address the plaintiff's IQ score of 67 and related diagnosis of mild intellectual disability, we do not reach the other issue. "A remand may produce different results on plaintiff's application, making discussion of the remaining claims moot." *Upshur v. Colvin*, 200 F. Supp. 3d 503, 513 n.3 (E.D. Pa. 2016).

On December 1, 2020, Johnson was seen by Carol Pulley, L.P.A., for psychological evaluation on the referral of a public agency health care coordinator. In addition to a clinical interview of Johnson and a historical review of treatment records, Pulley administered two psychological tests: the Wecshsler Adult Intelligence Scale, Fourth Edition (WAIS IV); and the Minnesota Multiphasic Personality Inventory (MMPI). The WAIS IV assessment resulted in a full-scale IQ score of 67. Pulley noted that this placed Johnson's overall level of functioning in the "extremely low range"—approximately the first percentile. Pulley noted that the WAIS IV test indicated a 95 percent confidence level that Johnson's IQ was between 64 and 72. Based on Johnson's WAIS IV results, Pulley recorded a diagnosis of mild intellectual disability (or mild intellectual developmental disorder). The MMPI results, however, were deemed

invalid because Johnson "provided a very unusual combination of responses that is strongly associated with non-credible memory complaints," resulting in an "F score" in excess of 99. Pulley commented: "It is likely that her level of intellectual functioning may have limited her ability to respond appropriately to the questions on the MMPI." Due to the invalid MMPI results, Pulley recorded a "rule out" diagnosis of bipolar II disorder, noting that Johnson reported many symptoms of bipolar II disorder, and recommending that she continued to be monitored for these symptoms. Pulley also recorded a diagnosis of generalized anxiety disorder based on her clinical interview and review of history. (Tr. 922–29.)

The ALJ did not address Johnson's low IQ score or her diagnosis of mild intellectual disability at step two or three. In determining Johnson's RFC, however, the ALJ considered and completely rejected Pulley's objective medical findings[3] with respect to Johnson's IQ, stating:

---

[3] We note that the WAIS IV and MMPI test results constitute *objective medical evidence* under the applicable regulations. *See* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both . . . ."); *id.* § 404.1502(c), 416.902(g) ("Laboratory findings means . . . psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include . . . psychological tests.").

> On December 1, 2020, she underwent a psychological evaluation performed by Carol Pulley at which time she was diagnosed with mild intellectual disability although FSIQ measured at 67 extremely low, generalized anxiety disorder, and bipolar II disorder was rule out. However, Ms. Pulley noted that the claimant's MMPI results were invalid, as the claimant provided a very unusual combination of responses strongly associated with non-credible memory complaints. The claimant's combination of responses were noted uncommon even in individual with significant emotionally dysfunction who report credible symptoms.

(Tr. 22 (citations omitted).) The ALJ then separately considered Pulley's findings as a medical opinion, stating:

> The undersigned does not find persuasive the psychological evaluation of Carol Pulley . . . , as there are no step-by-step limitations provided. Moreover, the record fails to support a finding for mild intellectual disability for the reason described above. Furthermore, the claimant's Minnesota Multiphasic Personality Inventory (MMPI) Report was invalidated as the claimant provided a very unusual combination of responses that were strongly associated with non-credible memory complaints. While it was noted that the combination of responses were uncommon even in individuals with significant emotional dysfunction who report credible symptoms intellectual functioning could have limited her ability to respond. However, the medical evidence record does not support this possibility. Treatment notes consistently document a fund of knowledge appropriate for the claimant's level of education, notably she reported that she graduated high school. Other evidence shows she answered questions appropriately with a normal affect, and

> despite mental issues, she was able to provide information about her health that was notably unimpeded by her mental state. The record goes on to show the claimant's ability to work, manage money, and manage personal care.

(Tr. 24 (citations omitted).)

With respect to Pulley's assessment of Johnson's IQ, we note that "[t]he Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record." *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003). But here, the ALJ has conflated the WAIS IV test and the MMPI test, both of which were administered by Pulley during her psychological evaluation of Johnson. As noted above, WAIS IV testing resulted in an expected IQ range of 64 to 72, stated with a 95 percent confidence level. There is no inconsistent medical evidence in the record—there are no other intelligence test results, nor is there any other objective medical evidence with respect to intellectual capacity. The medical opinions of the two state agency psychological consultants predate Pulley's psychological evaluation, and thus neither consultant had the opportunity to review and comment on Pulley's findings, and there are no other medical opinions in the record on this issue.

The ALJ pointed to the invalid MMPI test results, but the MMPI is a distinct battery of questions designed to assess personality traits and psychopathology. The inconclusive MMPI test results do not necessarily imply that the separately administered WAIS IV test result was *also* invalid. *Cf. Cortes v. Comm'r of Soc. Sec.*, 255 Fed. App'x 646, 652 (3d Cir. 2007) (psychologist's "provisional" diagnosis of mental retardation "had nothing to do with the validity of [the plaintiff's] IQ score or the related conclusion that her intellectual functioning was subaverage"). As the agency itself has recognized, "the commentary accompanying an IQ score should be consulted in evaluating the credibility of the test result." *Id.* at 652 n.4. Indeed, agency regulations explicitly state that "[o]nly qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that your obtained IQ score(s) is not an accurate reflection of your general intellectual functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(H)(2)(d). Here, the psychological specialist who administered the WAIS IV test made no such statement to suggest that the reported IQ score was not an accurate reflection of Johnson's intellectual functioning. *See id.* Indeed, her only comment was the opposite—Pulley reported that

the low IQ results were stated with a 95 percent confidence level.

In addition to the MMPI test result, the ALJ pointed to other medical and non-medical evidence in the record that he or she considered inconsistent with the low IQ score and related diagnosis of mild intellectual disability.[4] But this is simply a case of an ALJ improperly supplanting the medical judgment of an examining medical specialist with the ALJ's own "personal observation and speculation." *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (noting that "an ALJ may not make speculative inferences from medical reports").

"The ALJ is not free to independently review and interpret medical reports." *Harris v. Astrue*, 138 Soc. Sec. Rep. Serv. 1020, 2009 WL 189845, at *13 (W.D. Pa. 2009); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("[A]n ALJ may not make speculative inferences from

---

[4] We note that the ALJ treated this diagnosis as if it was a medical opinion, subject to analytic framework of persuasiveness set forth in 20 C.F.R. § 404.1520c and § 416.920c. But it is not. Pulley's diagnosis of mild intellectual disability falls within the category of "other medical evidence." *See* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairment, your medical history, clinical findings, *diagnosis*, treatment prescribed with response, or prognosis.") (emphasis added).

medical reports. In addition, an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence.") (citation omitted); *Holmes v. Saul*, Civil Action No. 3:18-CV-01401, 2019 WL 4187458, at *7 (M.D. Pa. Aug. 12, 2019) ("Simply stated, the ALJ could not disregard [a consultative examining physician's] expert opinion in favor of relying on his own medical conclusions to determine [the claimant's] RFC.") (citing *Harris*). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Morales*, 225 F.3d at 319.

Accordingly, we find that the ALJ impermissibly used his or her own lay opinion "to fill evidentiary gaps in the record" and arrive at his or her own conclusion regarding the plaintiff's intellectual capacity, which is unsupported by any competent medical assessment. *See Holmes*, 2019 WL 4187458, at *8. In light of this, we are unable to conclude that substantial evidence supports the ALJ's implicit step two determination that the plaintiff's mild intellectual disability was nonsevere, the ALJ's evaluation of the plaintiff's residual functional capacity, and the ALJ's step five determination that the plaintiff was capable of performing work

that exists in significant numbers in the national economy.

We further suggest—but do not order—that the Commissioner reassign this case to a different ALJ on remand. Based on our review of the written decision by the ALJ and other documents in the administrative record, and in light of the plaintiff's relocation from North Carolina to Pennsylvania, it is our impression that the goal of a fair and effective resolution of the plaintiff's application for disability insurance benefits may be best served by such reassignment. *See generally United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010) ("Courts can suggest but cannot require a change of administrative law judges unless the administrative law judge has demonstrated a degree of bias . . . that would disqualify him as a matter of due process from further participation in the litigation . . . .") (citing *Ventura v. Shalala*, 55 F.3d 900, 902–05 (3d Cir. 1995)) (citations omitted).

### III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Johnson was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying her application for disability insurance benefits and supplemental security

income will be vacated and the case will be remanded for further proceedings consistent with this opinion. We further suggest that the case be reassigned to a different ALJ on remand.

Dated: March 28, 2023  *s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge